Estate of Harriet Emily Barneson, Deceased, The Bank of California, National Association, J. Leslie Barneson and Lionel T. Barneson, Executors v. Commissioner.
Estate of Harriet Emily Barneson v. Commissioner
Docket No. 99593.
United States Tax Court
1945 Tax Ct. Memo LEXIS 233; 4 T.C.M. (CCH) 427; T.C.M. (RIA) 45129; April 17, 1945
*233 Fair market value at the date of the death of the decedent of a claim for refund of an overpayment of Federal income taxes on which suit was pending in the district court at that date, held to be $4,000. Joseph D. Brady, Esq., 458 S. Spring St., Los Angeles, Calif., for the petitioners. Earl C. Crouter, Esq., for the repondent. TYSON Memorandum Findings of Fact and Opinion This proceeding is here on mandate of the United States Circuit Court of Appeals for the Ninth Circuit. That court reversed a decision of the Board of Tax Appeals, pursuant to which decision part of an amount recovered as a refund on an overpayment by the decedent of income tax for the year 1925, consisting of the amount overpaid and interest accrued thereon up to the death of the decedent, was included in the gross estate of the decedent. The ground of the reversal was that the Board failed to find and to include in the gross estate the fair market value of the claim for refund at the date of the decedent's death; and the proceeding has been remanded to this Court with directions to find such fair market value and to redetermine the value of the gross and the net estates. 133 Fed. (2d) 433. *234 The only other issue before the Court was whether the Board erred in its valuation of stock of Oakburn Company owned by the decedent at date of death at $232,396.16. The Circuit Court affirmed the Board on this issue. All of the facts respecting the claim for refund which were placed before the Board at the original hearing were stipulated, and, as they were deemed insufficient to enable this Court to make a finding as directed, the proceeding was placed upon the calendar for the reception of such evidence respecting the fair market value of the claim for refund at the date of the decedent's death as the parties might desire to submit. The proceeding was duly heard, and at the hearing the parties presented further evidence in the form of a "stipulation of facts on remand" and have also introduced oral testimony. Findings of Fact We incorporate herein by reference and adopt as part of our findings the facts stipulated and found by the Board upon the original hearing and the facts stipulated on remand. The following is a summary of the pertinent facts contained in the stipulations and a statement of additional facts which we find upon the oral testimony. Harriet Emily Barneson *235 (hereinafter referred to as the decedent) filed with the collector for the first district of California an individual income tax return for the calendar year 1925. She died on April 14, 1936. In 1925 the decedent was the vice president of the Oakburn Company and the owner of one-sixth of its outstanding capital stock. She was the wife of John Barneson who was president of that company and also the owner of one-sixth of its outstanding capital stock. As the owners of such stock the decedent and John Barneson each received a cash distribution of $51,800 in 1925 from the Oakburn Company. The decedent reported her distribution of $51,800 as a dividend and included it in the gross income shown on her income tax return for 1925. Her return disclosed a tax liability of $29,823.95, and she paid the tax in four equal installments as follows: March 15, 1936, $7,455.99; June 8, 1936, $7,455.99; September 17, 1936, $7,456.00; and December 15, 1936, $7,455.97. John Barneson was president of the General Petroleum Corporation and, under a contract of employment made with that company, he was entitled to receive for his services, among other things, a percentage of its net profits. In 1922 he *236 made an assignment to the Oakburn Company of all amounts which thereafter were to become payable to him under his contract with the General Petroleum Corporation, in consideration of which the Oakburn Company agreed to pay him $30,000 per annum during his life. Pursuant to the assignment, the Oakburn Company received the following amounts from the General Petroleum Corporation: Year
Amount
1922
$188,787.27
1923
227,091.31
1924
250,565.31
1925
179,460.72
1926
10,843.41
$856,748.02
The Oakburn Company included the above amounts in its taxable income of the respective years. On December 13, 1929, the decedent filed with the collector for the first district of California a claim for refund of part of the income tax which she had paid for 1925. In the claim for refund the decedent cited a ruling of the Commissioner that the General Petroleum payments, hereinabove mentioned, were income of John Barneson rather than of the Oakburn Company, and asserted that, as a consequence of such ruling, the distribution of $51,800 which she had received from the Oakburn Company in 1925 represented a return of capital rather than a dividend and that, by reason of the erroneous *237 inclusion of the amount thereof in her income, she was entitled to a refund of $10,360. The Commissioner held that all dividends paid by the Oakburn Company during 1925 were paid from its accumulated earnings and that no part of the distribution received by the decedent represented a return of capital. He disallowed the decedent's claim for refund in its entirety and notified her of such disallowance on October 31, 1930. On October 20, 1932, the decedent filed a suit in the District Court of the United States for the Northern District of California, Southern Division, to recover an alleged overpayment of $10,360 in her income tax for 1925. The collector in his answer denied all allegations of the complaint. The decedent having died on April 14, 1936, her executors were substituted as parties plaintiff and the cause was thereafter heard in the District Court on December 21, 1937. The issue in the suit in the district court was related to and involved the status in the hands of the Oakburn Company of the payments from the General Petroleum Corporation which it received in the years 1922 to 1925 and reported as taxable income. Those payments and a similar payment of $10,843.41 in *238 1936 were involved in proceedings before the Board of Tax Appeals by the Oakburn Company (Docket No. 50361) and John Barneson (Docket No. 50362) for the redetermination of deficiencies for 1924, 1925, and 1926, wherein, on December 28, 1935, prior to the death of the decedent and prior to the hearing of the suit in the district court, the Board entered its findings of fact and opinions. The Board held that payments of $30,000 by the Oakburn Company to Barneson in each of the years 1924, 1925, and 1926 were not payments of annuities made pursuant to the assignment of 1922, but were payments of compensation for Barneson's personal services, and that they therefore were allowable as deduction in computing the net income of the Oakburn Company and were taxable income of Barneson. With respect to the payments by the General Petroleum Corporation to the Oakburn Company of $250,565.31 in 1924, $179,460.72 in 1925, and $10,843 in 1926, the Board held, in the Barneson case, that they were compensation for current and future personal services of Barneson as president of the General Petroleum Corporation and were taxable income of Barneson under the principle of Lucas v. Ear., 281 U.S. 111. *239 In its opinion the Board stated that, since the General Petroleum payments were taxable income of Barneson and since they were not made to the Oakburn Company to purchase an annuity but were in the nature of capital contributions, the distributions by the Oakburn Company to Barneson could be taxed as dividends only to the extent that such distributions were from earnings. On February 26, 1936, the respondent filed with the Board in the Barneson case a proposed recomputation of the deficiencies for 1924, 1925, and 1926. In these recomputations the respondent added to Barneson's income the amounts of $250,565.31, $179,460.72, and $10,843.41 which were the amounts actually paid by the General Petroleum Corporation to the Oakburn Company in the years 1924, 1925, and 1926, and the payments of $30,000 which Barneson received in each of those years from the Oakburn Company. The respondent made no adjustment with respect to any of the dividends which Barneson received from the Oakburn Company in those years and which he had included in the income reported on his returns. On April 28, 1936, 14 days after the death of the decedent, counsel for Barneson filed with the Board a proposed recomputation *240 of the deficiencies in which, after making the same adjustments with respect to the General Petroleum payments and the item of $30,000 as were made in the respondent's proposed recomputation, he deducted the amount of $27,109.77 in 1924, and $26,280.63 in 1925, as the portion of the dividends received from the Oakburn Company which represented a return of capital. Because of the differences in the recomputations proposed by the respective parties the Board held a hearing thereon on May 6, 1936, and thereafter, under date of June 6, 1936, it entered an order reading as follows: "This proceeding was called from the Day Calendar of May 6, 1936 for hearing under Rule 50. Prior thereto the parties submitted recommemorandum opinion entered December 28, 1935. They disagree first, as to whether any adjustment should be made in the dividends taxable to the petitioner, the respondent contending that this issue was not raised by the pleadings, and if considered, second, on the amount of earnings accumulated since February 28, 1913. The Board held that the payments made by the General Petroleum Corporation to Oakburn Company during the taxable years 1924, 1925 and 1926 were not income to the *241 Oakburn Company. The adjustment of earnings available for dividends necessarily follows from that conclusion. Those payments should therefore be excluded from income in determining the earnings available for distribution as dividends. It is therefore "ORDERED: That the parties submit recomputations of the deficiencies for the taxable years in question on or before June 24, 1936 on which date the proceeding will be called from the Day Calendar for hearing thereon, eliminating from earnings of the Oakburn Company available for distribution as dividends only the amounts paid to it by the General Petroleum Corporation during the years 1924, 1925 and 1926." On June 20, 1936, respondent filed with the Board a proposed recomputation of deficiencies in the Barneson case which was identical as to items and amounts with his proposed recomputation of February 26, 1936. Barneson did not contest this proposed recomputation and on June 29, 1936, the Board entered its decision redetermining the deficiencies for 1924, 1925, and 1926 in the amounts shown therein. The Commissioner attached to his recomputation of June 20, 1936 an analysis of the earnings and dividend distributions of the Oakburn *242 Company, in which the payments by the General Petroleum Corporation to the Oakburn Company were by him included in the earnings of the years 1922 and 1923 and excluded from the earnings of the years 1924, 1925, and 1926, in accordance with the Board's order of June 6, 1936. A summary of the analysis is as follows: Earnings
Dividends
Unused
Year
Available
Paid
Earnings
1921 (Oct. 18-
Dec. 31)
$ 11,003.12
none
$ 11,003.15
1922
204,931.01
none
215,934.16
1923
235,527.01
none
451,461.17
1924
87,117.24
$227,663.52
310,914.89
1925
202,906.13
310,800.00
203,021.02
1926
269,860.72
233,100.00
239,781.74
The Commissioner stated in his recomputation of June 20, 1936 that, inasmuch as his computation of earnings available for dividends disclosed that all distributions by the Oakburn Company in the years 1924, 1925, and 1926 were paid from earnings, he had made no adjustment, in recomputing the deficiencies, with respect to distributions received by Barneson from the Oakburn Company which were included as income in his returns and in the sixty day letter, and that: "Except for the year 1926, the unused earnings at the beginning of each *243 year were sufficient to cover all dividends paid during that year. For 1926, the unused earnings at the beginning of the year were sufficient to cover all dividends paid during the year except the final dividend of $31,080.00 paid on December 22, 1926 which was amply covered by earnings during the year prior to that date. Consequently, all distributions during the above years were 100 per cent taxable as dividends." The suit for refund came on for trial in the district court on December 21, 1937. The parties filed therein a stipulation of facts setting forth, among other things, that the Oakburn Company derived its income from dividends. interest, rents and royalties, and received certain payments from the General Petroleum Corporation, and that the total receipts, the portion thereof consisting of payments received from the General Petroleum Corporation, the net earnings from all other sources, and the dividends paid, were as follows: From General
Earnings from
Year
Total Receipts
Petroleum Corp.
Other Sources
Dividends Paid
1921
$ 10,078.16
$ 10,078.16
None
1922
227,882.76
$188,787.27
29,095.49
None
1923
241,372.60
227,091.31
14,281.29
None
1924
287,577.21
250,565.31
37,011.00
$227,663.52
1925
325,705.64
179,460.72
146,244.92
310,800.00
*244 The decedent's executors, as plaintiffs in the suit for refund, produced as a witness an accountant who testified that he had examined the books of the Oakburn Company covering the period from its formation in October 1921 to the end of 1925, and that he had determined that of the distribution of $51,800 received by the decedent in 1925, $27,426.03 had its origin in payments from the General Petroleum Corporation and $24,372.97 was paid out of earnings from other sources. The accountant also testified that, assuming no tax was payable by the decedent on the said sum of $27,426.03, her overpayment of income tax for 1925 was $5,485.20. In April 1938 the district court made findings of fact and conclusions of law. That court found that of the $51,800 received by the decedent from the Oakburn Company and included in her income for 1925, $24,573.92 represented payments out of income of the Oakburn Company and the balance of $27,426.03 was paid by that company out of its capital, and that the decedent paid income taxes upon the latter sum in the amount of $5,485.20; and it held, as a matter of law, that no income taxes were payable upon the said $27,426.03 and the plaintiffs were entitled *245 to judgment for $5,485.20 with interest from December 15, 1926 to the date of refund. Judgment was entered by the district court on May 4, 1938, and there was no appeal therefrom. During the calendar year 1939 the executors of the decedent received, pursuant to the judgment, a refund payment of $9,453.48, which represented principal in the amount of $5,485.20, interest to the date of decedent's death in the amount of $3,071.39, and interest accrued after her death in the amount of $896.89. The fair market value of the decedent's claim for refund on April 14, 1936, the date of her death, was $4,000. Opinion TYSON, Judge: The respondent included in the gross estate $15,172.84, stating that $9,453.48 thereof represented the principal of the claim for refund and $5,719.36 represented interest accrued to the date to the decedent's death. The parties stipulated that the amount received as a refund was $9,453.48, of which $5,485.20 represented the principal, $3,071.39 represented interest accrued up to the date of death, and $896.89 represented interest accrued subsequent thereto, and that the executors paid $499.88 for attorney's services in recovering the overpaid tax. They also stipulated *246 that the respondent erroneously included $5,719.36 in the gross estate and that the estate had received no deduction for the item of $499.88. On brief, the respondent conceded that the interest of $876.89 accrued after the decedent's death should not be included in the gross estate. On the record thus made the petitioners on the original hearing sought to exclude the claim for refund from the gross estate on the ground that it was nonassignable by virtue of section 3477 of the Revised Statutes and hence could have no fair market value. The Board disagreed and held in its opinion that the principal of the claim, plus interest accrued to the date of death should be included in the gross estate and, pursuant to the concession of the respondent, it allowed deduction of the attorney's fees. This resulted in the inclusion of the net amount of $8,056.71 in the gross estate. In reaching its decision on this point the Board followed Security-First National Bank of Los Angeles, Executor of the Estate of Milton Sills, Decedent, 35 B.T.A. 815, which arose on a similar state of facts. On review of this decision the Circuit Court of Appeals said that in determining the fair market *247 value the existence of a willing buyer and a willing seller must be assumed and that it must be further assumed that the refund claim could and would change hands, even though, by the prohibition of section 3477, such a change could not in fact occur; and it held that it was error for the Board to include in the gross estate so much of the amount recovered as represented the principal of the claim and interest accrued to the date of death, without making any finding as to the fair market value of the claim at that date. It remanded the case with directions to find such fair market value, and in the light of our finding as to such value to redetermine the value of decedent's gross and net estates. The respondent now contends that the amount to be included in the gross estate is $8,056.71, consisting of principal of the refund ($5,485.20), plus interest to the date of death ($3,071.39), less legal expenses of $499.88. This is the same amount which the Board, in its former opinion, included in the gross estate of decedent. The respondent takes the position that this amount represents a determination of value by him which should be approved for various reasons. First, he says that *248 the petitioners in their pleadings and contentions before the Board in the original hearing limited the issue to the question, whether the claim for refund was without value because it was not assignable under section 3477 of the Revised Statutes, and, as they did not then offer other evidence bearing on the value of the claim, they were not entitled to the further hearing on remand and have "waived any further attack upon the value of the refund claim". This position is untenable. The Circuit Court of Appeals after hearing and deciding the issue as it was presented to the Board directed this Court to find the fair market value of the claim. We find nothing in the opinion or mandate of that court which forbids our receiving further evidence on the question of value; and it was because of our inability to find, from the record made before us at the original hearing, the fair market value of the claim for refund at the date of decedent's death that we had the proceeding placed upon the calendar for the reception of such evidence respecting that value as the parties might desire to submit. Moreover, the respondent is in no position to argue that the petitioners may not attack his valuation, *249 or to contend, as he does, that his determinatior is entitled to the presumption of correctness. The respondent did not value the claim at $8,056.71. He valued it at $15,172.84 and, as such determination was excessive, it must be disregarded by us entirely in finding the fair market value of the claim at the basic date. Cf. Helvering v. Taylor, 293 U.S. 507., Russell v. Commissioner, 45 Fed. (2d) 100; Wilson [Coal] Land Co. v. Commissioner, 87 Fed. (2d) 185. Secondly, the respondent asserts that we must accept the value of $8,056.71 as final and conclusive, because the parties agreed that that amount should be included in the gross estate in the event the Board should reject the petitioners' argument that, as a matter of law, section 3477 of the Revised Statutes prevented the claim for refund from having a market value. We find nothing whatever in the record to support the assertion that the parties made such an agreement, and the petitioners are therefore not concluded on the question of value, as the respondent contends. The respondent next argues that the Sills, supra, case authorizes the inclusion in the gross estate of the principal *250 recovered on the claim for refund, plus the interest accrued to the time of death. The Board followed the Sills case in its opinion on the original hearing in this proceeding and included such principal and interest in the gross estate, but since this action of the Board has been held improper by the Circuit Court of Appeals in the present case, we are powerless to include such amount in the gross estate unless we can find, on the evidence, that it represents the fair market value of the claim at the date of the decedent's death. The Sills case does not affect the problem of valuation of the claim for refund presented by the remand in this case. Our problem, therefore, is to determine the fair market value of the claim for refund on the evidence presented at the original hearing and the hearing on remand and without regard to any valuation placed thereon by the respondent in determining the deficiency. Assuming that the entire dividend received in 1925 was a nontaxable distribution because made from capital of Oakburn Company, the maximum amount which could possibly be recovered as principal of the overpayment in tax was not the amount of $10,360, sought in the claim for refund *251 and in the suit thereon in the district court, but the amount of $7,455.97 which was paid as the fourth quarterly installment of the tax on December 15, 1926; and this because the claim for refund was filed more than three years after payment of the first three quarterly installments of the 1925 tax, and any recovery on account of those payments was barred. Our inquiry therefore is, what would a prospective purchaser at the basic date have paid for the chance of recovering on this claim for $7,455.97, plus interest accrued to the date of death. Obviously, he would not have paid a price equal to the maximum amount beyond which there was no possibility of recovery. Even if he believed that he could recover the maximum amount, he would consider that some allowance must be made for his court costs and attorneys' fees, and that he was entitled to a fair amount as a profit. In addition to these factors he would consider the probability of an unfavorable result in the suit in the district court. Recovery in that suit depended upon the dividend of $51,800 received from the Oakburn Company in 1925 being held to be a nontaxable dividend because paid from capital of Oakburn Company rather than *252 from its earnings, and the purchaser would have to consider whether he could prove such facts. In considering the probability of making such proof the purchaser would have known that the respondent, in rejecting the claim for refund, had based his action on a finding that the eividend was paid from earnings; that the collector, in the suit in the district court, denied all liability in his answer upon simlar grounds, and the suit was contested and awaiting trial; that the Board of Tax Appeals, in the John Barneson case dealing with distributions of the Oakburn Company and decided on December 28, 1935, prior to the basic date, had held that substantial sums received from the General Petroleum Corporation were not income of the Oakburn Company and should be eliminated from its earnings in computing earnings available for dividends; that the district court could differ with the Board as to the character of such payments, but that, even if it did not, he would still be required to prove that the earnings of the Oakburn Company exclusive of the General Petroleum payments, were insufficient to pay the dividend of 1925. And, from the proceedings in the Board subsequent to its decision of *253 December 28, 1935 in the John Barneson case and prior to the basic date, the purchaser would have known that in the recomputation filed by the respondent of February 26, 1936, the respondent made no adjustment on account of the Oakburn Company divided of $51,800 which John Barneson had included in his income for 1925, and was at that date contending, in effect, that the Oakburn Company had sufficient earnings to pay the dividend after eliminating the General Petroleum payments. These matters were, in greater part, unfavorable to realization on the claim. On the other hand, the amount and the sources of the income of the Oakburn Company were of record on the books of that company. Whether or not the books on the basic date in 1936 revealed enough information to show, as was later shown in the district court, that the Oakburn Company did not have earnings sufficient to pay all of the dividend of 1925 is a matter upon which we have no knowledge. However, we do know that the suit was brought upon the theory that the dividend was paid from capital, and that the decedent kept the suit at issue up to the date of her death. In other words, there was indication that decedent believed the claim *254 to be well founded and that it had some value. The petitioners in their brief on remand concede that the claim did have a value. The valuation of property of the nature of that here involved is a difficult one, but from what has been said it is clearly apparent that the fair market value of the claim was much below the maximum amount which by any possibility could have been realized on the claim. Considering all the facts and circumstances in the whole record and exercising our best judgment in the matter, we reach the conclusion that the claim had a fair market value as stated in our findings of $4,000 as of April 14, 1936. In so finding we are not unmindful of the fact that, three years after the basic date, the executors of the decedent recovered $5,485.20 as principal of the claim and $3,071.39 as accrued interest to the date of death. But the favorable result of the suit is no more controlling on the question of value at the date of the decedent's death than if the district court had decided against the claimants. Ithaca Trust Co. v. United States, 279 U.S. 151; Guggenheim v. Helvering, 117 Fed. (2d) 469; National Water Main Cleaning Co., 16 B.T.A. 223; *255 and Estate of Millie Langley Wright, 43 B.T.A. 551. The value of the gross and the net estates should be computed by including therein the amount of $4,000 as the value of the claim for refund, and by allowing as a deduction the amount of $499.88 which was paid to attorneys for services in recovering the refund, and which latter amount was conceded at the original hearing of this proceeding to be a proper deduction. Decision will be entered under Rule 50.